UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KEVIN COOK,

                                Plaintiff,

      - against -

SHERRIFF CARL DUBOIS and SGT. COLBY,

                                Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-8317 (CS)

Appearances:

Kevin Cook
New Hampton, New York
*Pro Se*

Anthony F. Cardoso
Assistant County Attorney
County of Orange
Goshen, New York
*Counsel for Defendants*

Seibel, J.

     Before the Court is Defendants' motion to dismiss.  (Doc. 18.)  For the following reasons,

the motion is GRANTED.

## I.     **BACKGROUND**

### A.    **Facts**

     I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended

Complaint, (Doc. 17 ("AC")), his original Complaint, (Doc. 1), and his submissions in

opposition to the motion, (Docs. 23, 26 ("P's Mem."), 28).  *See Washington v. Westchester Cnty.

Dep't of Correction*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015)

(court may consider facts from *pro se* plaintiff's original complaint even if they have not been

repeated in amended complaint); *Braxton v. Nichols*, No. 09-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[1]  The Amended Complaint relies on and incorporates by reference a Hearing Report Form, (Doc. 19-3), Officer J. Kania's Inmate Misbehavior Report, (P's Mem. at 6), the prison's surveillance video of the altercation at issue (which Defendants have supplied to the Court on a disk), an appearance ticket for assault issued to Plaintiff by the Goshen Town Court, (Doc. 28 at 7), and a denial of a grievance he filed, (Doc. 28 at 5-6).[2]  (AC at 4, 6-8.)[3]  Thus, I may also consider these documents for the purposes of this motion to dismiss.  *See Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

On August 15, 2019, Plaintiff Kevin Cook was watching television at the Orange County Correctional Facility when a "young brother[]" asked him if another inmate, Moran, owed him money.  (AC at 4.)  Plaintiff responded affirmatively.  (*Id.*)  The "young brother" then went over to Moran, telling Moran that he should pay Plaintiff back.  (*Id.*)  Plaintiff was ten feet away from Moran when Moran stated, "I don't owe anybody[,] that's on my mother."  (*Id.*)  After Moran made this statement, Plaintiff approached and confronted Moran.  (*Id.*)  According to the disciplinary hearing record, by Plaintiff's account the dispute arose due to various loans of commissary goods that Plaintiff provided to Moran.  (Hearing Report Form at 2.)  Plaintiff

---

[1] The Court will send to Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

[2] Plaintiff attached the Hearing Report Form, Officer J. Kania's Inmate Misbehavior Report, the grievance denial, and the appearance ticket to his original Complaint, but not the Amended Complaint.  He also attached those documents to his submissions in opposition to the motion. (Doc. 23 at 5-9; P's Mem. at 6-10; Doc. 28 at 3-7.)

[3] Page numbers for the Amended Complaint and Hearing Report Form refer to the page numbers generated by the Electronic Case Filing system.

alleges that he had a written agreement with Moran that allowed Plaintiff to "hit [Moran] in the eye" if Moran failed to pay. (*Id.*) Plaintiff claims that Moran ran at him and denies that he hit Moran in the face. (AC at 4.)

The prison's security cameras recorded the altercation in its entirety, and the footage is incorporated by reference in Plaintiff's Amended Complaint by several instances where the Amended Complaint states that Plaintiff's allegations are confirmed by the video. (AC at 4, 6-7.) Because there were multiple cameras, the lead-up to the altercation can be seen from multiple angles. The relevant portion of the footage begins on the feeds from Cameras 5 and 7 at 21:20:04, when Plaintiff (the man in the middle of the video) approaches Moran (the seated man). After Plaintiff confronts him, Moran gets up with his coffee cup and backs away. (Camera 7 at 21:20:12.) Moran puts down the cup and momentarily grabs a chair and holds it up in a threatening manner before placing it back down. (Camera 5 at 21:20:19-26; Camera 7 at 21:20:19-26.) After placing the chair down, Moran backs away from Plaintiff with his hands fully at his sides. (Camera 7 at 21:20:26-40.) At 21:20:40, Plaintiff lunges at Moran, and as they go out of view, the footage continues on Camera 6. Moran attempts to run but Plaintiff grabs him and raises his right fist as Moran ducks, before Plaintiff appears to strike Moran in the head. (Camera 6 at 21:20:41.) In the next few frames, Moran reaches his right arm up around Plaintiff's neck, attempting to put him in a headlock, while the two struggle. (*Id.* at 21:20:42-45.) By the angle of his legs and Plaintiff's position over him, Moran appears to be unbalanced, and at 21:20:46-47, Plaintiff takes Moran to the ground. The struggle continues with Plaintiff straddling Moran. After they fall, Plaintiff immediately raises his right elbow and appears to punch Moran in the head. (*Id.* at 21:20:48.) At 21:20:50, Moran rolls on his side in what appears to be the fetal position, while Plaintiff gets up on his knees and then straddles him. At

21:20:55, Plaintiff begins punching Moran repeatedly in what appears to be his face or side of his head.  Plaintiff can be seen holding Moran down with his left arm while punching with his right.  At 21:21:08, a corrections officer arrives to separate Plaintiff from Moran, who is still on the ground.  At 21:21:31, Moran quickly gets up, picks up a chair, and approaches Plaintiff from behind  – apparently prepared to strike Plaintiff with the chair – but stops at the officer's direction.  (*Id.* at 21:21:33.)  At that point, the fight is over.

At no point in the video can Moran be clearly seen throwing a punch.  While Moran is facing away from the camera after he falls to the ground, and Plaintiff's leg partially blocks the view of Moran's face and arms, the angle of his body and Plaintiff's position above him suggest that Moran did not return punches toward Plaintiff.  After the officer orders Plaintiff to get up, Moran can be seen covering his head with his elbows.  (*Id.* at 21:21:10-28.)  Plaintiff also states in his complaint that he bit Moran during the course of the fight.  (AC at 5.)

Plaintiff claims non-party Officer J. Kania charged Plaintiff with assault even though Kania "did not use the word assault not one time in his incident report."  (*Id.*)  The Inmate Misbehavior Report completed by Kania, however, plainly charges disruptive conduct, fighting, and assault.  (P's Mem. at 6.)  The Hearing Report Form reflects that Plaintiff pleaded guilty to fighting but not guilty to the other two charges.  (Hearing Report Form at 2.)

Plaintiff alleges that Defendant Sgt. Colby presided over Plaintiff's prison disciplinary hearing.  (AC at 6-7.)  Colby told Plaintiff that it appeared from the video that Plaintiff was the aggressor in the fight and "that white boy didn't have [a] chance you knocked him down . . . I watched the video 4 time[s] you knocked him down."  (*Id.* at 6 (internal quotation marks omitted).)  Plaintiff states that Colby and other prison staff did not let him see the video of the altercation, although other inmates who had been disciplined in the past had seen the videos of

their alleged incidents prior to their hearings.  (*Id.* at 7.)  Plaintiff was subsequently found guilty of all three charges and placed on keeplock for fourteen days.  (Hearing Report Form at 2.) Colby is not alleged to have otherwise been involved with any decisions regarding Moran or the later issuance of a criminal appearance ticket for assault in Goshen Town Court.

Plaintiff does not allege that he appealed his disciplinary determination, but he did file a grievance contesting the assault finding, (P's Mem. at 2), which was denied because disciplinary proceedings are not grievable matters, (P's Mem. at 8; *see* N.Y. Comp. Codes R. & Regs tit. 9 § 7032.4(h) ("Grievances regarding dispositions or sanctions from disciplinary hearings . . . are not grievable and may be returned to the inmate by the grievance coordinator.")).

Plaintiff was then charged with assault and issued an appearance ticket for Goshen Town Court.  (Doc. 28 at 7.)  Nowhere in the Amended Complaint does Plaintiff discuss Defendant Sheriff Dubois, who is mentioned only in the caption.  (AC at 1.)  In his memorandum, Plaintiff states that he included Dubois because the appearance ticket must have "stopped at his desk for review."  (P's Mem. at 3.)

Plaintiff concludes his Amended Complaint by stating that his complaint is not based on race or color but that his race was an "underlying and or motivating factor."  (AC at 8.)

B.     <u>**Procedural History**</u>

Plaintiff filed his original Complaint on November 6, 2019, bringing claims under 42 U.S.C. § 1983 for "cruel and unusual punishment, prejudice, [and] double jeopardy."  (Doc. 1 at 2.)  The Court held a pre-motion conference on January 31, 2020, at which I granted Plaintiff leave to amend his complaint.  (Minute Entry dated Jan. 31, 2020.)  Plaintiff submitted his Amended Complaint on February 19, 2020, which alleged only "discriminating and discrimination."  (AC at 2.)

On April 13, 2020, Defendants submitted the instant motion, (Doc. 18), which seeks to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  Defendants argue that Plaintiff has failed to allege the personal involvement of either defendant in the alleged unlawful conduct as required by 42 U.S.C. § 1983, that he failed to exhaust his administrative remedies under the Prison Litigation Reform Act, that he has failed to state a valid equal protection or double jeopardy claim, and that even if Plaintiff had properly pleaded these claims, both Defendants would be entitled to qualified immunity.  (Doc. 20 ("Ds' Mem.") at 1.)

Plaintiff submitted his response memorandum, filed as a "Reply Affirmation," on June 11, 2020, (P's Mem.), as well as letters to the court on May 7, (Doc. 23), August 24, (Doc. 27), and November 2, (Doc. 28).  Defendants submitted their reply memorandum on May 27.  (Doc. 24.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss*, 762 F. Supp. 2d at 567 (internal quotation marks omitted).

## B.   Pro Se Plaintiffs

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted).  Nevertheless, "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Personal Involvement

Defendants first argue that Plaintiff's Amended Complaint must be dismissed because he has failed to plead facts showing the personal involvement of either Defendant.  (Ds' Mem. at 5-7.)  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted).  While *Colon* laid out a special test for supervisory liability outlining five ways a plaintiff could show personal involvement of a supervisor, the Second Circuit recently clarified that under the Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, No. 19-3712, 2020 WL 7687688, at *6 (2d Cir. Dec. 28, 2020) (quoting *Iqbal*, 556 U.S. at 676).  "Simply put, there's no special rule of liability for supervisors."  *Id.*  While "'[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at 676) (second alteration in original), "[t]he violation must be established against the supervisory official *directly*."  *Id.* (emphasis added).

It is unclear from Plaintiff's filings how exactly he believes his rights were violated by Defendants.  Interpreting the Amended Complaint as broadly as possible given his *pro se* status, however, I assume from it, Plaintiff's memorandum in opposition, and his statements at the January 31, 2020 pre-motion conference that Plaintiff believes he was treated differently than

Moran in the disposition of his disciplinary proceeding and the filing of the criminal charge against him, because he is Black and Moran is white.  I construe this as an alleged equal protection violation.

Defendant Dubois[4] is not mentioned anywhere in Plaintiff's Amended Complaint beyond his inclusion in the caption, which ordinarily is insufficient to show personal involvement.  *See Boykin v. Moreno*, No. 17-CV-6869, 2020 WL 882195, at *3 (S.D.N.Y. Feb. 24, 2020), *appeal filed*, No. 20-1959 (2d Cir. May 21, 2020); *King v. Falco*, 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018).  In his response memorandum, Plaintiff makes no allegation that Sherriff Dubois was personally responsible for his alleged discriminatory treatment, but states he included him as a defendant because his criminal assault charge surely "stopped at his desk for review," and that therefore he "became aware of[] and became complicit to the furtherance of the whole process which is one big act of discrimination."  (P's Mem. at 3.)  I will assume for the sake of argument that the assault ticket came across Dubois's desk, but that cannot support the inference that Dubois, through "[his] own individual actions, has violated the Constitution." *Tangreti*, 2020 WL 7687688, at *4 (quoting *Iqbal*, 556 U.S. at 676).  Plaintiff does not allege facts plausibly suggesting that Dubois even knew that Plaintiff was being treated unfairly compared to Moran, let alone that Dubois had anything to do with it.

Thus, Plaintiff appears to be suing Dubois based merely on his supervisory position, which even before *Tangreti* would not suffice to show personal involvement for purposes of § 1983.  *See, e.g.*, *Banks v. Annucci*, 48 F.Supp. 3d 394, 416 (N.D.N.Y. 2004) ("Where a defendant is a supervisory official, a mere linkage to the unlawful conduct through the chain of

---

[4] Because the issue of Defendant Sgt. Colby's individual liability is more directly entwined with the merits of Plaintiff's equal protection claim, I analyze Plaintiff's allegations against him in Section C below.

command (*i.e.*, under the doctrine of *respondeat superior*) is insufficient to show his or her

personal involvement in that unlawful conduct." (internal quotation marks omitted)).

The claims against Dubois are therefore dismissed.

## B.    Exhaustion Under the PLRA

In the Amended Complaint and other filings, Plaintiff appears to challenge the guilty

verdict of assault from his disciplinary hearing and the resulting imposition of his prison

disciplinary sentence of fourteen days keeplock while Moran, a white inmate, was not similarly

punished.  (AC. at 7; P's Mem. at 2-3.)  Defendants first argue this claim is barred by the Prison

Litigation Reform Act ("PLRA"), as Plaintiff did not exhaust his administrative remedies with

respect to his imposed discipline.  Exhaustion is required for "all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Proter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA

mandates that a plaintiff use "all steps that the agency holds out, and do[] so properly" – that is,

in accordance with the applicable agency rules. *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir.

2011) (internal quotation marks omitted).

New York's correctional regulations provide, as earlier noted, that an inmate may not use

the grievance process to contest the outcome of a prison disciplinary hearing.  N.Y. Comp.

Codes R. & Regs tit. 9 § 7032.4(h).  But there is an appeal process for inmates who are found

guilty in jail disciplinary proceedings. *See* N.Y. Comp. Codes R. & Regs tit. 9 § 7006.10.  This

procedure must be followed to satisfy the PLRA. *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir.

2009) (noting that plaintiff exhausted his remedies by appealing disciplinary proceeding, not by

filing grievance); *Rivera v. Goord*, 253 F. Supp. 2d 735, 751 (S.D.N.Y. 2003) (claim about

officer's conduct at disciplinary hearing was not appealed and thus not exhausted under PLRA).

The basis of Plaintiff's alleged harm here is not his conditions of confinement, which would be the proper subject of a grievance, but rather the conduct and imposition of discipline at his hearing.  *See Davis*, 576 F.3d at 133.  To satisfy the PLRA, therefore, Plaintiff had to appeal the disciplinary outcome in order to "procedurally exhaust his or her available remedies."  *Lopez v. Cipolini*, 136 F. Supp 3d 570, 585 (S.D.N.Y. 2015) (internal quotation marks and alteration omitted).  But while he filed a grievance, he apparently never filed an appeal of the discipline despite being issued an appeal form with his Hearing Report Form.  (Hearing Report Form at 3.)  The Hearing Report Form clearly states that any appeal of the decision must be submitted in writing within two business days of the completion of the hearing, and that his right to appeal the decision expires if not filed within the statutory time.  (*Id.*)

Because he did not file an appeal, Plaintiff failed to exhaust his administrative remedies under the PLRA, and this case must be dismissed.  But even if Plaintiff had exhausted his remedies, his claims would fail on the merits, which I address below in an excess of caution.

### C.  Equal Protection Claim

Plaintiff's reference generally to "discrimination" in the Amended Complaint appears to fall under the ambit of the Equal Protection Clause, as he claims he was treated differently than Moran, a white inmate who was also involved in the fight.  I construe this as a selective enforcement claim.  Defendants argue that this claim fails because Moran was not similarly situated to him.  (Ds' Mem. at 10-12.)

To state a claim for selective enforcement under the Equal Protection Clause, a plaintiff must allege facts showing that (1) compared with others similarly situated, the plaintiff was selectively adversely treated, and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional

rights, or malicious or bad faith intent to injure a person.  *See Meiner v. Clinton County*, 541

F.3d 464, 474 (2d Cir. 2008).  In short, a "plaintiff must allege 'that he was treated differently

than others similarly situated as a result of intentional or purposeful discrimination.'"  *Gilliam v.*

*Baez*, No. 15-CV-6631, 2017 WL 476733, at *7 (S.D.N.Y. Feb. 2, 2017) (quoting *Phillips v.*

*Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).  To be "'similarly situated,' the individuals with

whom [she] attempts to compare herself must be similarly situated in all material respects."

*Sumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997).

    The surveillance video makes plain that Plaintiff is not similarly situated to Moran.

Moran was not the aggressor in the fight and Plaintiff does not claim that Moran threw the first

punch.  The video footage clearly shows that Plaintiff was the one who attacked Moran,

repeatedly pummeling him, while Moran did not throw a punch at Plaintiff during the entire

altercation.  There is no equal protection violation where inmates are treated differently for

different conduct.  *See, e.g.*, *Kimbrough v. Fischer*, No. 13-CV-100, 2014 WL 12684106, at *14

(N.D.N.Y. Sept. 29, 2014), *report and recommendation adopted*, 2016 WL 660919 (N.D.N.Y.

Feb. 18, 2016).  Given the obvious differences in Plaintiff's conduct and Moran's, it is not

plausible that Plaintiff's harsher discipline "was the result of purposeful discrimination."  *Leyva*

*v. Warden*, No. 16-CV-82, 2016 WL 9446861, at *5 (N.D.N.Y. May 20, 2016) (internal

quotation marks omitted), *aff'd*, 699 F. App'x 4 (2d Cir. 2017) (summary order).

    Even if Plaintiff were similarly situated to Moran, he does not allege anywhere in his

Amended Complaint, memorandum, or letters to the court, that Defendant Colby personally

treated Plaintiff and Moran differently in any way.  There are no facts suggesting that Colby

made any decisions regarding Moran.  Colby is described as the hearing officer for Plaintiff's

disciplinary hearing, but Plaintiff does not state that Colby had any involvement in deciding who

would be charged in the first instance, in determining what charges would be brought, or in referring Plaintiff to be criminally charged in Goshen Town Court.  Rather, Plaintiff seems to acknowledge that he is suing Colby here because Colby presided over the hearing and, based on his review of the video footage of the fight, determined that the charges presented against Plaintiff were justified.  (AC at 6-7.)  While Plaintiff also states that Colby referred to Moran as "'that white boy,'" (*id.* at 6), this alone fails to plausibly show any selective enforcement on Colby's part.  *See Lee v. Mackay*, 29 Fed. App'x 679, 680-81 (2d Cir. 2002) (summary order) (racial comments alone insufficient to state a cognizable equal protection claim).

In sum, nowhere in his papers does Plaintiff plausibly allege facts that show Colby treated Plaintiff and Moran differently, let alone because of race, and therefore any equal protection claim must be dismissed.

### D.   Due Process Claims

#### 1.   Failure to Show Video Evidence

In addition to his equal protection claim, Plaintiff may also be trying raise a due process claim against Colby for not allowing him to see the video evidence against him.  (*See* AC at 7.)

While "there is no right . . . to confrontation at prison disciplinary hearings," *Sira v. Martin*, 380 F.3d 57, 69 (2d Cir. 2004),

> an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken,

*id.* (collecting cases).  In some circumstances, refusing to show an inmate security footage of the incident in question may present due process issues.  *See Hadden v. Mukasey*, No. 07-CV-7909, 2008 WL 2332344, at *2-3 (S.D.N.Y. June 3, 2008).

The Second Circuit has held, however, that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial," *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991), or, "in other words, [whether] the hearing result would have been different had [the plaintiff] been given access to [the evidence in question]," *Eleby v. Selsky*, 682 F. Supp. 2d 289, 292 (W.D.N.Y. 2010).

Because any procedural violation here would not have changed the outcome of the hearing, I need not reach the question of whether Colby's refusal to show Plaintiff the video presents a due process violation. Here, the video plainly shows exactly what Colby told Plaintiff the video shows, so the outcome of the hearing would have been the same regardless of whether Colby had shown Plaintiff the video. Thus, any error here is harmless, and this claim, to the extent Plaintiff is raising it, must also be dismissed.[5]

### 2.     Double Jeopardy Claim

In his initial complaint, but not the Amended Complaint, Plaintiff also explicitly alleged a violation of his rights under the Double Jeopardy Clause of the Fifth Amendment. (Doc. 1 at 2.) While it is unclear whether Plaintiff still intends to pursue this claim, I will address it out of an abundance of caution because Plaintiff notes in the Amended Complaint that he was charged

---

[5] Plaintiff's real complaint about the disciplinary proceedings seems to be that he does not understand how one can be guilty both of assault and of fighting the same person at the same time. (AC at 7; Doc. 23 at 1; P's Mem. at 1-2.) It seems plain to the Court that one could be guilty of fighting without being guilty of assault, if one is attacked but then fights back; one could be guilty of assault but not fighting if one strikes a person once but then stops; and that one could be guilty of both if one strikes another and continues to do so. In any event, there is no due process right to be free of a false or inaccurate disciplinary accusation. *See Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986).

criminally for the same conduct that was a subject of his disciplinary hearing at the correctional facility.  (*See* AC at 7-8.)

The Double Jeopardy Clause protects individuals from three types of violations:  (1) a second prosecution after acquittal for the same offense, (2) a second prosecution after conviction for the same offense, and (3) multiple punishments for the same offense.  *United States v. Lopez*, 356 F.3d 463, 467 (2d Cir. 2004).  Supreme Court precedent makes clear, however, that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense."  *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis in original). "[C]riminal prosecutions and prison disciplinary proceedings based on the same conduct do not implicate double jeopardy concerns," *Porter v. Coughlin*, 421 F.3d 141, 142 (2d Cir. 2005), and "it is 'well settled that "punishment" imposed by prison authorities for infractions of prison regulations does not generally bar a subsequent criminal prosecution for the same conduct,'" *id.* (quoting *United States v. Hernandez-Fundora*, 58 F.3d 802, 806 (2d Cir. 1995)).

For these reasons, Plaintiff's double jeopardy claim, to the extent he still wishes to bring it, also fails.

### E.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from
Defendants stating the grounds on which they would move to dismiss, (Doc. 13), as well as the
Court's observations during the pre-motion conference, (*see* Minute Entry dated Jan. 31, 2020).
In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided
notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union
Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was
aware of the deficiencies in his complaint when he first amended, he clearly has no right to a
second amendment even if the proposed second amended complaint in fact cures the defects of
the first.  Simply put, a busy district court need not allow itself to be imposed upon by the
presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted);
*In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying
leave to amend because "the plaintiffs have had two opportunities to cure the defects in their
complaints, including a procedure through which the plaintiffs were provided notice of defects in
the Consolidated Amended Complaint by the defendants and given a chance to amend their
Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended
complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance
Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an
advisory opinion from the Court informing them of the deficiencies in the complaint and then an
opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in
possession of facts that would cure the deficiencies identified in this opinion.  *See TechnoMarine
SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to
amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the

complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss is GRANTED.[6]  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 18), and close the case.

**SO ORDERED.**

Dated:  January 11, 2021
        White Plains, New York

_____
     CATHY SEIBEL, U.S.D.J.

---

[6] Because I find that the Amended Complaint is dismissed in its entirety based on Rule 12(b)(6), I need not reach Defendants' argument that Dubois and Colby are entitled to qualified immunity.